**REMAND / JS-6**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 26-3060-GW-ASx | Date | May 12, 2026 |
|---|---|---|---|
| Title | *Thomas Lavia, et al. v. The Standard Fire Insurance Company, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:**   **IN CHAMBERS - ORDER GRANTING MOTION TO REMAND, DENYING REQUEST FOR FEES/COSTS, VACATING HEARING**

Plaintiffs Thomas Lavia, Sarah Lavia, Joseph Layton, Catherine Layton, Sherwood Vane, Janee Vane, Joshua Weisman and Elizabeth Marks (collectively, "Plaintiffs") have filed a motion to remand in this action removed to Federal Court on March 20, 2026, by defendant The Standard Fire Insurance Company ("Standard Fire"). Standard Fire removed the action based on the contention that all of the requisites for this Court's diversity jurisdiction are in existence, contingent on the argument that the Court would agree with it that Standard Fire's co-defendant, Tyler Atwood ("Atwood"), was fraudulently joined, meaning that his citizenship – which Standard Fire admits is non-diverse, *see* Notice of Removal, Docket No. 1, ¶ 3 – could be ignored in making the jurisdictional assessment.[1] Plaintiffs' argument in their motion is that Standard Fire has not met the standard for fraudulent joinder, and thus cannot demonstrate a basis for this Court's subject matter jurisdiction. Standard Fire and Atwood have separately opposed Plaintiffs' motion. For the reasons laid out below, the Court would agree with Plaintiffs. Oral argument is not necessary, and the Court therefore vacates the May 21, 2026, hearing date set for the motion. *See* C.D. Cal. L.R.7-15 ("The Court may dispense with oral argument on any motion except where an oral hearing is required by statute, the F.R.Civ.P. or these Local Rules."). The matter will be remanded, mooting out the other pending motions in the action.

Standard Fire and Atwood argue their positions on this motion by effectively minimizing the Ninth Circuit's explanation, in 2018, that a district court must consider "whether a deficiency in [a] complaint can possibly be cured by granting the plaintiff leave to amend," *Grancare, LLC v. Thrower by and through*

---

[1]Having taken the position that Atwood was fraudulently joined, Standard Fire also asserted that it need not have obtained Atwood's consent to removal. *See* Notice of Removal, Docket No. 1, ¶ 44.

| | : |
|---|---|
| Initials of Preparer | JG |

REMAND / JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 26-3060-GW-ASx | | Date | May 12, 2026 |
|---|---|---|---|---|
| Title | *Thomas Lavia, et al. v. The Standard Fire Insurance Company, et al.* | | | |

*Mills*, 889 F.3d 543, 550 (9th Cir. 2018),[2] rather than considering only whether a claim has *presently* been properly-stated against a non-diverse defendant.  The majority of Standard Fire's and Atwood's arguments fail because of that shortcoming.

Standard Fire and Atwood do not dispute that Atwood, an insurance agent, *see* Complaint, Docket No. 1-2, ¶ 6, could have owed plaintiffs Thomas Lavia and Sarah Lavia ("the Lavias") – the only plaintiffs to whom Atwood is allegedly connected – a heightened duty if one or more exceptions to an insurance broker's ordinarily-limited duty applied to the relationship between the Lavias and Atwood.  *See Fitzpatrick v. Hayes*, 57 Cal.App.4th 916, 927 (1997) ("The rule [that an insurance agent does not have a duty to volunteer to an insured that the latter should procure additional or different insurance coverage] changes . . . when . . . one of the following three things happens: (a) the agent misrepresents the nature, extent or scope of the coverage being offered or provided . . . , (b) there is a request or inquiry by the insured for a particular type or extent of coverage . . . , or (c) the agent assumes an additional duty by either express agreement or by 'holding himself out' as having expertise in a given field of insurance being sought by the insured.").  Plaintiffs have made an effort to allege the requisites for such an exception already.  *See* Complaint ¶ 73 ("Atwood undertook a special duty of care toward the Lavias in the procurement of the Lavia Policy and Renewal by misrepresenting or failing to verify the nature, extent, or scope of coverage being offered to the Lavias for the Lavia Property and/or by holding himself out as having a particular expertise with respect to the insurance sought by the Lavias."); *id.* ¶ 74 ("The Lavias relied on Atwood's prof[fered] expertise in obtaining homeowners insurance coverage . . . ."); *see also id.* ¶ 6 (alleging that Atwood is "the Executive Vice President of VIP Insurance Services LLC").  Standard Fire and Atwood do not believe what Plaintiffs have alleged thus far satisfies the standard for the *Fitzpatrick* exception to be in-play.

Without resolving that debate (because the Court does not believe that it is its proper role to do so, if it has no jurisdiction), even if Standard Fire and Atwood were correct that, on the present state of things as alleged in the Complaint (or even when considering the material outside the Complaint that they assert the Court can consider in resolving this motion – discussed *infra*), the Plaintiffs have not successfully alleged a claim against Atwood by virtue of insufficient allegations to meet one or more of the exceptions recognized in *Fitzpatrick*, this Court simply cannot reach the conclusion that the Complaint cannot "possibly

---

[2]In its removal and Opposition papers, Standard Fire at least pays lip service to this standard.  *See* Notice of Removal, ¶ 23; Docket No. 32, at 6:7-11.  For his part, Atwood attempts to rely in his Opposition brief on a formulation of the rule that this Court does not believe can be squared with that laid out in *Grancare*.  *See* Docket No. 31, at 4:14-20 (after recognizing *Grancare* "can possibly be cured" standard, asserting – without citation – that "this doctrine does not permit reliance on speculation, conclusory allegations, or shifting factual theories unsupported by the pleadings"); *id.* at 5:1 (stating – again without citation – that "Nor does the mere possibility of amendment require remand"); *see also id.* at 5:10-12 (making similar assertion, again without citation).

:

Initials of Preparer    JG

**REMAND / JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 26-3060-GW-ASx | Date | May 12, 2026 |
|---|---|---|---|
| Title | *Thomas Lavia, et al. v. The Standard Fire Insurance Company*, et al. | | |

be cured" in this regard.  As *Grancare* makes clear, the relevant inquiry is not *only* whether the Lavias have sufficiently stated a claim against Atwood at this point in time.  Indeed, that is the question in the Rule 12(b)(6) context, and *Grancare* made crystal-clear that the two assessments were distinct.  *See Grancare*, 889 F.3d at 549-50.

With respect to the fraudulent-joinder question, Standard Fire cannot rely on cases such as *Charlin v. Allstate Ins. Co.*, 19 F.Supp.2d 1137, 1142 (C.D. Cal. 1998), which pre-dated *Grancare* by 20 years.  For one thing, *Charlin* never even considered the possibility of amendment.  The Court has also reviewed the district court decision in *Casa Colina, Inc. v. Hartford Fire Ins. Co.*, No. CV 20-7809-DMG (KSx), 2020 WL 7388426 (C.D. Cal. Dec. 15, 2020).  While it understands that Court's decision to address the plaintiff's explanation in that case for how the plaintiff believed it could amend its allegations, *see id.* at *4, it is not convinced that the *Casa Colina* court faithfully applied the "can possibly be cured" standard – a standard it never actually recognized, having not cited to (nor quoted from) *Grancare* – by doing so.  The point, under *Grancare*, is the *possibility* of amendment – *possibility* is the consideration because "the fraudulent joinder analysis seeks to determine whether the allegedly-fraudulently joined defendant "'cannot be liable on any theory'" (demonstrating how difficult it is to satisfy the fraudulent-joinder standard).  *See Grancare*, 889 F.3d at 548 (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)).  It will be up to a court properly having jurisdiction – here, the California state courts – to determine whether Plaintiffs/the Lavias have successfully pled an exception recognized under *Fitzpatrick* currently or, if not currently, via a future amendment.  This Court cannot conclude that it is impossible for them to do so.

In relying on materials outside the Complaint, State Farm and Atwood focus on the question of *when* the square-footage discrepancy mentioned in Plaintiffs' Complaint was present in the Lavias' policies with State Farm.  To begin with, however, Plaintiffs have alleged that their insurance policy "was based on inaccurate and fictitious inputs, *including but not limited to* an inaccurate square footage for the dwelling." Complaint ¶ 74 (emphasis added); *see also id.* ¶¶ 25, 31.  Thus, that timing issue could not resolve matters in Atwood's favor under any circumstance because it would not account for other "inaccurate and fictitious inputs," even if further amendment were required to clarify that reference.  In any event, even if Standard Fire and Atwood are correct that only a square-footage discrepancy is at issue, and that this issue was present in the 2021 policy renewal (not in the 2020 policy that Atwood helped procure), Plaintiffs' theory against Atwood appears to be that he did not disclose errors in the policy, and that his failure to do so continued on into the future, including into and during renewal-policy periods, even if he was involved in procuring only the original 2020 policy.  *See id.* ¶ 37 (alleging the Lavias relied on Atwood "to advise them of this issue," *i.e.* that the size of the house had been "incorrectly listed . . . at only 3,614 square feet *in the Lavia Renewal*") (emphasis added), ¶ 73 ("Atwood undertook a special duty of care toward the Lavias in the procurement of the Lavia Policy *and Renewal* . . . .") (emphasis added); *see also id.* ¶ 74.  The appearance or non-appearance of the square-footage issue in the 2020 policy does not, therefore,

:

Initials of Preparer        JG

**REMAND / JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 26-3060-GW-ASx | Date | May 12, 2026 |
|---|---|---|---|
| Title | *Thomas Lavia, et al. v. The Standard Fire Insurance Company*, et al. | | |

conclusively resolve things in Atwood's favor, at least under Plaintiffs' theory. If the focus on the timing of the square-footage issue is an attempt to rule out Plaintiffs' ability to rely upon the first *Fitzpatrick* exception, *that is not the only exception* they attempt to rely on here.

In short, in essentially challenging the sufficiency of Plaintiffs' present allegations against Atwood, Standard Fire and Atwood are leaning too far towards Rule 12(b)(6)-type arguments (which, again, would require consideration of liberal policies allowing amendment) and too far away from the fraudulent joinder framework explained in *Grancare*.

With respect to their separate argument that the statute of limitations bars any claim against Atwood, Standard Fire and Atwood cannot overcome this Court's conclusion (which is not intended as a final ruling on any statute of limitations-based defense, should the parties desire to continue to litigate it in state court) that the Lavias' claim against Atwood did not *accrue* until, at the very earliest, their house burned down in January 2025. The Lavias' claim against Atwood is for "negligence (agent)." *See* Complaint at 21:1-3. As Standard Fire acknowledges, *see* Docket No. 32, at 7:18-19, a claim accrues, for statute-of-limitations purposes, when injury occurs or when all elements of the action have been met. *See Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397 (1999) ("Under the statute of limitations, a plaintiff must bring a cause of action within the limitations period applicable thereto after accrual of the cause of action. The general rule for defining the accrual of a cause of action sets the date as the time 'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises . . . .' In other words, it sets the date as the time when the cause of action is complete with all of its elements – the elements being generically referred to by sets of terms such as 'wrongdoing' or 'wrongful conduct,' 'cause' or 'causation,' and 'harm' or 'injury.'") (omitting internal citations) (quoting 3 Witkin, Cal. Procedure: Actions (4th ed. 1996), § 459, at pg. 580 and *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1107, 1109-10, 1112-14 (1988)); *City of Vista v. Robert Thomas Sec., Inc.*, 84 Cal.App.4th 882, 886 (2000) ("When damages are an element of a cause of action, the cause of action does not accrue until the damages have been sustained."); *see also Peredia v. HR Mobile Servs., Inc.*, 25 Cal.App.5th 680, 687 (2018) (identifying "damages" as one of the four elements of a negligence claim under California law). Thus, the Lavias' claim against Atwood could not have accrued until the Lavias allegedly suffered damages.

If Atwood was responsible for the alleged under-insurance of the Lavias' home (by virtue of his participation in under-stating the home's square footage or otherwise),[3] the Lavias did not suffer any

---

[3]The question of whether Atwood was sufficiently causally-related to the harm the Lavias suffered – for instance, whether he played any role connected to the renewal policies leading up to the time of the fire – is not, as the Court sees it, a *statute of limitations question* with respect to him. As explained above, the statute of limitations for the Lavias' negligence claim runs from – at the very earliest – the time of the fire, full-stop. Whether Atwood is causally-connected to those

Initials of Preparer    JG

**REMAND / JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 26-3060-GW-ASx | Date | May 12, 2026 |
|---|---|---|---|
| Title | *Thomas Lavia, et al. v. The Standard Fire Insurance Company*, et al. | | |

damage/were not injured as a result thereof until the fire destroyed their home.  *See* Complaint ¶¶ 36-37, 76; *Lederer v. Gursey Schneider LLP*, 22 Cal.App.5th 508, 525 (2018) ("The [California] Supreme Court said, 'The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm – not yet realized – does not suffice to create a cause of action for negligence.  Hence, until the client suffers appreciable harm as a consequence of [the] attorney's negligence, the client cannot establish a cause of action for malpractice.'") (quoting *Jordache Enters., Inc. v. Brobekc, Phleger & Harrison*, 18 Cal.4th 739, 750 (1998)) (omitting internal quotation marks); *see also Moss v. Duncan*, 36 Cal.App.5th 569, 576 (2019) (identifying date of final notice of assessment as point when actual injury occurred in case of alleged accountant negligence in connection with tax preparation and/or advice); *Miller v. Lakeside Village Condo. Ass'n, Inc.*, 1 Cal.App.4th 1611, 1622-23 (1991); *Walker v. Pac. Indem. Co.*, 183 Cal.App.2d 513, 517 (1960).  It is not, for instance, Plaintiffs' assertion that the Lavias paid more than they should have in premiums for their policy while the square-footage error was in place, *i.e.* they did not suffer financial harm in that regard, which might have pre-dated the fire that destroyed their home.[4]

Atwood makes the seemingly-bold assertions that "Plaintiff's [*sic*] claim is not based on a latent coverage defect that only materialized upon a future loss" and that the claim is framed as one involving "a concrete and discoverable error, not a purely outcome-based claim dependent on the later wildfire loss."  Docket No. 31, at 12:25-26, 12:28-13:3.  Neither of those statements come with the benefit of citation to any supporting case law, and Atwood makes no attempt to deal with – for example – any of the law set forth in the Court's preceding two paragraphs.  Standard Fire takes a similar apparently-unsupported position when it states that "any alleged injury stemming from the use of allegedly erroneous square footage information in connection with the 2020-21 policy occurred, at the latest, when such information was allegedly carried over into the first renewal policy."  Docket No. 32, at 2:14-17.  The Court has to therefore ask – what was that "injury" at that time?  There is no obvious answer in either Atwood's or Standard Fire's papers.  Atwood himself reveals the flaw in his/Standard Fire's argument when he observes, in his Opposition, that "[t]he fire may have revealed the financial consequences of that alleged defect [in the inputs used to calculate policy limits known in 2020-2021]" – in other words, damage/injury – though he then reaches the incorrect conclusion (given the case law cited above) that the fire "did not create the claim."  Docket No. 31, at 14:17-20.

Standard Fire's attempt to distinguish *Hydro-Mill Co. v. Hayward, Tilton & Rolapp Insurance*

---

damages is another matter.

[4]Even that type of harm would not appear to constitute the accrual-onset *for a negligence claim*.  *See Cty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal.App.4th 292, 318 (2006) ("Not just any damage will cause a . . . negligence cause of action to accrue.  One thing is clear: economic loss alone, without physical injury, does not amount to the type of damage that cause a negligence . . . cause of action to accrue.").

| | : | |
|---|---|---|
| Initials of Preparer | JG | |

REMAND / JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 26-3060-GW-ASx | Date | May 12, 2026 |
|---|---|---|---|
| Title | *Thomas Lavia, et al. v. The Standard Fire Insurance Company*, et al. | | |

*Associates, Inc.*, 115 Cal.App.4th 1145 (2004), by characterizing it as a case where "the claimed negligence and the resulting injury converged in a single policy period," Docket No. 32, at 8:25-9:4, only points to a distinction that makes no difference.  The loss that began the running of the limitations period in that case still was identified as having occurred as of the date the plaintiff was informed that, following damage caused by an earthquake, the plaintiff's insurer would pay a certain amount that excluded losses related to leased locations that had been excluded from the policy in question.  *See Hydro-Mill*, 115 Cal.App.4th at 1162.  *Hydro-Mill* clearly aids Plaintiffs' case on the statute-of-limitations question.

As such, while Atwood and Standard Fire may wish it were so, the Court does not concur in their view of things in this regard.  There was no compensable damage or injury under the Lavias' policy with Standard Fire until the January 2025 fire, at the earliest.  Whether the square-footage error was discoverable before that time is simply irrelevant, in the Court's view of things (though, again, the Court does not intend to conclusively judge any statute of limitations defense on its merits via this proceeding).

Standard Fire's last remaining argument for why the Court can ignore Atwood's citizenship relies upon the assertion that there has been a fraudulent *mis*joinder in this case, both with respect to the joinder of any claim against Atwood stemming from the Lavias' 2000 policy and any claim involving any of the Lavias' renewal policies, and with respect to joining claims brought by the various plaintiff couples (who all had different homes, separate policies, etc.).  As the Court has already explained in a very similar lawsuit between almost all of the same parties to this case, fraudulent *mis*joinder is not a doctrine that the Ninth Circuit – unlike other courts – appears to have recognized.  *See* Stevenson & Fitzgerald, RUTTER GROUP PRAC. GUIDE, FEDERAL CIV. PRO. BEFORE TRIAL (The Rutter Group 2025), ¶ 2:2425.1; *see also Layton v. The Standard Fire Ins. Co.*, No. 2:25-cv-07216-GW (JCx), Docket No. 42 (C.D. Cal. Dec. 8, 2025); *Osborn v. Metropolitan Life Ins. Co.*, 341 F.Supp.2d 1123, 1126-28 (E.D. Cal. 2004); *Early v. Northrop Grumman Corp.*, No. 2:13-cv-3130-ODW (MRWx), 2013 WL 3872218, *2 (C.D. Cal. July 24, 2013).  This Court remains convinced that concerns about misjoinder are to be resolved by a court that already has jurisdiction over a matter.  For the reasons explained, this Court does not.

The Court will not award fees/costs to Plaintiffs because of Standard Fire's removal.  Whether or not Standard Fire properly accounted for *Grancare* in removing the case, the Ninth Circuit itself has not directly addressed – or rejected – the fraudulent misjoinder theory that Standard Fire partially relied upon here, and some district courts within this Circuit have accepted it.[5]  Because Standard Fire could present a colorable argument on that topic – even one that *this Court* rejects – the Court will not conclude that Standard Fire "lacked an objectively reasonable basis" to remove.  *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

---

[5]Plaintiffs themselves admit that "fraudulent misjoinder is unsettled in this Circuit."  Docket No. 27, at 16:16.

:

Initials of Preparer    JG

**REMAND / JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 26-3060-GW-ASx | Date | May 12, 2026 |
|---|---|---|---|
| Title | *Thomas Lavia, et al. v. The Standard Fire Insurance Company, et al.* | | |

The May 21, 2026, hearing on Plaintiffs' remand motion is vacated.  The matter is remanded to the Superior Court of the State of California, County of Los Angeles.

IT IS SO ORDERED.

:

Initials of Preparer   JG